UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KIMORA SUSAN MILLER,<br><br>    Plaintiff,<br><br>  v.<br><br>TRANS UNION LLC,<br><br>    Defendant. | Case No.:<br><br><br>**COMPLAINT AND JURY DEMAND** |

This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff Kimora Susan Miller, a living, breathing 21-year-old consumer, brings this action on an individual basis, against Defendant Trans Union LLC ("Trans Union") and states as follows:

### INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Plaintiff's claims arise out of Defendant's blatantly inaccurate credit reporting, wherein Defendant TransUnion reported to Plaintiff's potential creditors that she is "deceased" and does not have a credit score.

3. Defendant TransUnion communicated to one or more third parties that Plaintiff's name, date of birth, and social security number belong to a deceased

1

person, communicating to end users that extending credit to Plaintiff presents a high risk of fraud. Plaintiff was denied credit because Defendant erroneously reported that Plaintiff is deceased.

4.  Accordingly, Plaintiff brings claims against Defendant Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of 15 U.S.C. § 1681e(b).

5.  As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorney's fees from the Defendant for its willful and/or negligent violations of the FCRA

## PARTIES

6.  Plaintiff Kimora Susan Miller resides in Woodstock, Georgia and is a "consumer" as defined in 15 U.S.C. § 1681a(c).

7.  Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency that maintains its principal place of business at 555 W. Adams St Chicago, Illinois 60661, and is authorized to do business in this District. Trans Union can be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTS

**Defendant's Practices Concerning the Sale of Reports on the "Deceased"**

10. Defendant does not request or require a death certificate from any data source claiming that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit report.

11. Defendant's furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" or "U/UNDESIGNATED" code in the "ECOA" field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

12. Defendant does not have any procedure to notify consumers (including next of kin, executor, or administrator of the consumer's estate) when an "X," "U/UNDESIGNATED," or other code is furnished to them to be placed in the consumer's credit file or report.

13. Defendant does not reasonably and independently verify a deceased notation with public record information, other furnishers/creditors, or other sources, including the Social Security Administration's Master Death File.

14. Even when other data on the face of the consumer's report indicates that he/she is not deceased, Defendant does not employ adequate procedures to

assure that a consumer is in fact actually deceased before marking the consumer as "deceased."

15. Once a "deceased" mark is placed upon a consumer's report, Defendant will not calculate and will not provide a credit score for that consumer, instead reporting it as "N/A," effectively zero.

16. Defendant is aware of the shortcomings of its procedures, which caused Plaintiff's injuries in this action, and intentionally chooses not to comply with the FCRA to maintain its high profit margins.

17. Defendant is on notice of the shortcomings of its procedures based on, *inter alia*, manifold consumer and/or governmental complaints, based on similar or the same FCRA violations, submitted via the Better Business Bureau, CFPB, arbitration, and/or filed and adjudicated in court; as well as consent decrees and jury verdicts related to same.

**Allegations Specific to Plaintiff**

18. In or around October 2024, Plaintiff applied for a credit card with Wells Fargo to use for personal, family, or household purposes.

19. Upon information and belief, on or about October 10, 2024, Defendant sold to Wells Fargo a consumer report about Plaintiff wherein Defendant reported that Plaintiff was deceased.

20. Shortly after submitting her credit card application, on or about October 10, 2024, Wells Fargo denied Plaintiff's credit application Defendant's credit report about Plaintiff indicated that she was deceased.

21. Due to Defendant's inaccurate reporting, Plaintiff's credit card application was denied.

22. Plaintiff was disappointed, dismayed and mortified at the denial.

23. Plaintiff was particularly upset to learn that Defendant reported that she was deceased when she was very much alive.

24. Upon discovering the inaccurate deceased notation through Wells Fargo's denial letter, Plaintiff diligently investigated the issue. She confirmed with the Social Security Administration that it did not report her as deceased in their Master Death File. Plaintiff verified that her Experian and Equifax credit reports contained no deceased notation.

25. Plaintiff attempted to access her Trans Union report through Annual Credit Report and Credit Karma, but TransUnion denied her access to up-to-date information, providing only a report from July 2023.

26. Despite clear, readily available evidence from other credit reporting bureaus and the Social Security Administration that Plaintiff was alive, Defendant TransUnion failed to display correct information or even allow Plaintiff direct access to her most current report, compounding her confusion and distress.

27. Plaintiff reasonably believes that Defendant continues to publish that she is deceased in the credit reports it issues about her.

28. As a result of the "deceased" notation, Defendant made it practically impossible for Plaintiff to continue to obtain credit.

29. At all relevant times, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant herein.

30. At all relevant times, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent, and in utter disregard for federal law and Plaintiff's rights as explained herein.

31. The consequences of Defendant's inaccurate reporting quickly escalated, resulting in Plaintiff's financial resources becoming severely strained. With no access to additional credit, Plaintiff was unable to meet her necessary expenses, and unpaid bills rapidly accumulated. The inability to secure credit directly contributed to Plaintiff's eviction from her home, a traumatic and humiliating event, since access to credit would have afforded her with the financial flexibility her financial situation demanded.

32. The trauma and humiliation Plaintiff suffered was exacerbated by the degrading experience of seeing her and her girlfriend's belongings publicly discarded in the parking lot of what had once been their home before their friends and neighbors. Explaining this deeply personal crisis to family, friends, and community members intensified Plaintiff's sense of shame and embarrassment, causing her significant emotional trauma.

33. Since she was evicted around January 2025, Plaintiff and her girlfriend have been living in their car.

34. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages, such as homelessness; loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time, effort, labor, and money ensuring that other furnishers and sources of consumer data do not report that she is deceased; and emotional distress including the mental and emotional pain, anguish, shame, humiliation, and embarrassment of credit denials.

## COUNT I
### Violations of 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

35. Plaintiff re-alleges and incorporates the preceding allegations as if fully stated herein.

36. Defendant violated 15 U.S.C § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its credit reports and credit files it published and maintained concerning Plaintiff.

37. Defendant published on its consumer report about Plaintiff that she was deceased when she is obviously not.

38. Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information in its consumer report concerning Plaintiff because it could have easily confirmed that Plaintiff is not deceased by checking readily available public records.

39. Defendant's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

40. Plaintiff is entitled to recover attorney's fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 13, 2025

*/s/ Moshe Boroosan*
Moshe Boroosan, GA Bar No. 744128
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 887-2926
F: (718) 715-1750
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff*
*Kimora Susan Miller*